**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

DJULIA K.,[1]

        **Plaintiff,**

        **Case No. 1:24-cv-6213**

      **v.**               **Magistrate Judge Norah McCann King**

FRANK BISIGNANO,[2]
**Commissioner of Social Security,**

        **Defendant.**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Djulia K. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

## I.    PROCEDURAL HISTORY

On May 5, 2020, Plaintiff filed an application for benefits, alleging that she has been disabled since January 30, 2016, a date that was later amended to December 21, 2018.[3] R. 90, 99, 302–05. The application was denied initially and upon reconsideration. R. 139–43, 145–52. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 153–54. ALJ Frederick Timm held a hearing on June 5, 2023, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 22–56. In a decision dated July 3, 2023, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from December 21, 2018, Plaintiff's amended alleged disability onset date, through December 31, 2021, the date on which Plaintiff was last insured for disability insurance benefits. R. 103–28. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 18, 2024. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 5, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 5.[4] On June 12, 2024, the case was reassigned to the undersigned. ECF No. 6.  The matter is ripe for disposition.

---

[3] Plaintiff amended her original alleged disability onset date from January 30, 2016, to December 21, 2018, *i.e.*, one day after an unfavorable decision on Plaintiff's prior Title II application was rendered. R. 29, 57–72, 103.

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

3

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award

benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

## B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

6

of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2021. R. 105. She was 53 years old on that date. R. 126. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between December 21, 2018, her amended alleged disability onset date, through the date on which she was last insured. R. 106.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease-lumbar spine, osteoarthritis- bilateral shoulders, bursitis-bilateral hips status post-arthroscopies, obesity, mood disorder, anxiety disorder, and learning disorder. R. 106–07. The ALJ also found that the following impairments were not severe: superficial venous insufficiency, cervical spinal degenerative disc disease, right ankle dysfunction, and complex

regional pain/complex pain syndrome ("Complex Regional Pain Syndrome" or "CRPS"). R. 107–08. As for CRPS, the ALJ found as follows:

> As to complex regional pain/complex pain syndrome, despite the same, the record fails to reveal, during the relevant period, an ongoing consistent course of treatment specifically for this condition (Exhibits B4F/1-40; B5F-B10F; B11F/1-3; B12F-B16F; B17F/1-2, 5-7; B18F/9-22; B22F/11-22; B24F/15-17; B25F/19-61). Further, the record, in the relevant period, documents abnormal exam findings being found in the context of and/or secondary to the claimant's above stated severe impairments rather than any pain syndrome alone (id.). Likewise, the record also documents, during the relevant period, alleged pain syndrome signs/symptoms being treated in the context of and/or secondary to the claimant's above-stated severe impairments rather than any alleged pain syndrome standing alone (id.). As such, the undersigned is considering any alleged pain syndrome signs/symptoms as the alleged signs/symptoms of her above-stated severe impairments in the sequential evaluation process consistent with SSRs 96-8p and 03-2p.
>
> Accordingly, . . . complex regional pain/complex pain syndrome did not constitute [a] severe medically determinable impairment[] during the relevant period because [it] did not more than minimally limit the claimant's ability to engage in work-related activities (20 CFR 404.1520(c), 20 CFR 404.1522; SSR 85-28). The undersigned notes, the undersigned considered complex regional pain/complex pain syndrome consistent with SSR 03-2p in the sequential evaluation process, including when making this finding.

R. 108.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 108–12.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 112–26. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a pharmacy technician. R. 126.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—e.g., jobs as an office helper, a storage facility rental clerk, and a fundraiser—existed in the national economy and could be performed by Plaintiff with this RFC. R. 126–27. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of

the Social Security Act from December 21, 2018, her amended alleged disability onset date, through December 31, 2021, the date on which she was last insured for benefits. R. 127–28.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 11; *Plaintiff's Reply Brief*, ECF No. 14. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 13.

## IV.     SUMMARY OF RELEVANT MEDICAL EVIDENCE

On  September 10, 2021, Andrew Blank, D.O., Plaintiff's treating provider, wrote a prescription for a "handicap placard" for the New Jersey Motor Vehicle Commissioner (NJMVC). R. 753.      On October 25, 2022, Dr. Blank completed Family Leave Act/New Jersey Temporary Disability Insurance forms, indicating that Plaintiff required full time care, described as "medical and assist with ADL's [activities of daily living] & mobility" due to "hips, legs, lumbar spine pain;" indicating that she first required care on August 4, 2022, but that, as of October 25, 2022, she no longer required this care. R. 280–91.

On December 28, 2022, Dr. Blank completed a five-page, check-the-box, and fill-in-the-blank form entitled, "Multiple Impairment Questionnaire". R. 949–53. Dr. Blank indicated that he had first treated Plaintiff on January 1, 2008, and had most recently examined her on November 2022. R. 949. He diagnosed osteoarthritis, intervertebral disc displacement in the lumber region, lumbago with sciatica, and anxiety. *Id*. Plaintiff's primary symptoms were "chronic pain in hips, lower back, hard to walk, stand, or lift." R. 950. She had undergone

surgeries in both hips and had received multiple injections and physical therapy, but she still suffered from daily pain in the sides of her hips and lower back. *Id*. According to Dr. Blank, standing, lifting, and walking for an extended period of time precipitated and/or aggravated Plaintiff's pain and her course of treatment had been consistent with the symptoms and limitations identified in the questionnaire. *Id*. In an eight-hour day, Plaintiff could perform a job in a seated position for less than one hour and could perform a job standing and/or walking for less than one hour. R. 951. It was medically necessary for Plaintiff to avoid continuous sitting in an eight-hour day, and she must get up and walk around every 10 to 15 minutes for a period of 10 to 15 minutes before returning to a seated position. *Id*. Plaintiff must also elevate her legs "six inches or less" while sitting. *Id*. Dr. Blank opined that Plaintiff could lift up to 10 pounds occasionally (meaning up to one-third of an eight-hour day) and could carry up to 5 pounds occasionally. *Id*. Plaintiff has "significant limitations in reaching, handling or fingering," *i.e.*, she could frequently use her hands/fingers for fine manipulations and could occasionally grasp, turn and twist objects and could occasionally use her arms for reaching (including overhead). R. 952. Her symptoms were likely to increase and she would suffer "more chronic pain" if she were "placed in a competitive work environment". *Id*. Her "experience of pain, fatigue, or other symptoms" was severe enough to frequently (meaning from one-third to two-thirds of an eight-hour workday) "interfere with attention and concentration[.]" *Id*. Plaintiff would require unscheduled breaks every half hour, for 15 minutes. *Id*. She was likely to be absent from work more than three times a month. R. 953 (checking both "Yes" and "No" boxes when asked whether Plaintiff has good days and bad days). Dr. Blank denied that Plaintiff's emotional factors contributed to her symptoms and functional limitations. *Id*. According to Dr. Blank, Plaintiff's symptoms and related limitations applied as far back as "14 years[.]" *Id*. He also

stated that Plaintiff's symptoms and functional limitations were reasonably consistent with the clinical and/or objective findings contained in the questionnaire. *Id*.

On February 1, 2023, Dr. Blank again completed a "Multiple Impairment Questionnaire[.]" R. 408–12. Dr. Blank stated that he saw Plaintiff approximately every three months, and had most recently examined her on January 24, 2023. R. 408. He diagnosed osteoarthritis, intervertebral disc displacement in the lumber and lumbago with sciatica, polyarthritis, hip and shoulder pain, polyneuropathy, and anxiety. *Id*. He denied that Plaintiff was a malingerer. *Id*. Dr. Blank identified Plaintiff's primary symptoms as chronic pain in the lower back and hips and "[d]ifficulty walking, standing & lifting[.]" R. 409. He characterized Plaintiff's pain as chronic, daily pain, precipitated and/or aggravated by "[l]ifting, walk & standing for long periods." *Id*. Plaintiff's treatment consisted of physical therapy, hydrocortisone injections, bilateral hip surgeries, hysterectomy, and heel spur injections. *Id*. (indicating that this course of treatment was consistent with the symptoms and limitations described in the questionnaire). According to Dr. Blank, in an eight-hour day, Plaintiff could perform a job in a seated position for less than one hour and a job standing and/or walking for less than one hour. R. 410. It was medically necessary for Plaintiff to avoid continuous sitting in an eight-hour day; Plaintiff must get up and walk around every 10 to 15 minutes for a period of 10 to 15 minutes before returning to a seated position, and to elevate her legs "six inches or less" while sitting. *Id*. Dr. Blank opined that Plaintiff was able to lift up to 10 pounds occasionally (meaning up to one-third of an eight-hour day) and carry up to 5 pounds occasionally. *Id*. Plaintiff also had "significant limitations in reaching, handling or fingering," could frequently use her hands/fingers for fine manipulations, could occasionally grasp, turn and twist objects and could occasionally use her arms for reaching (including overhead). R. 411. He also opined that she

11

would suffer "continued chronic pain" if she were "placed in a competitive work environment". *Id.* Her "experience of pain, fatigue, or other symptoms" were severe enough to frequently (meaning from one-third to two-thirds of an eight-hour workday) "interfere with attention and concentration[.]" *Id.* Dr. Blank further opined that Plaintiff requires unscheduled 15-minute breaks every half hour. *Id.* Dr. Blank denied that Plaintiff had good days and bad days, but she was likely to be absent from work more than three times a month. R. 412. Dr. Blank denied that Plaintiff's emotional factors contributed to Plaintiff's symptoms and functional limitations. *Id.* According to Dr. Blank, Plaintiff's symptoms and related limitations applied as far back as "14-15 years[.]" *Id.* Her symptoms and functional limitations were reasonably consistent with the clinical and/or objective findings in the questionnaire. *Id.*

On June 1, 2023, Dr. Blank completed a seven-page, check-the-box, and fill-in-the-blank form entitled, "Pain Assessment." R. 442–48. He indicated that he had last examined Plaintiff on May 1, 2023, diagnosing her with osteoarthritis in her hips, sacroiliitis, low back pain, and tendonitis. R. 442 (citing x-ray, lab, and positive EMG testing in support). According to Dr. Blank, Plaintiff's daily pain resulted in a limited range of motion and caused difficulty with performing activities of daily living; activities precipitated her pain; and movement aggravated her pain. R. 443. Dr. Blank diagnosed CRPS or CPS. [5] R. 444. Plaintiff's pain had lasted more

---

[5] This syndrome, also known as Reflex Sympathetic Dystrophy Syndrome ("RSDS"),
is a chronic pain syndrome most often resulting from trauma to a single extremity. It can also result from diseases, surgery, or injury affecting other parts of the body. Even a minor injury can trigger RSDS/CRPS [Chronic Regional Pain Syndrome]. The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma. Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone. It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual. When left untreated, the signs and symptoms of the disorder may worsen over time.

than six months and was neuropathic in origin, *i.e.*, was without a defined trigger or site to explain it. *Id*. (denying that Plaintiff had an altered pain threshold as a result of peripheral and central sensitization following injury). Dr. Blank checked off the following signs and symptoms in support of this diagnosis: body percent disturbance, chronic fatigue, decreased range of motion, impaired sleep, muscle symptoms (such as spasms and weakness), neuropathic pain, and numbness. *Id*. Treatment had included non-opioid analgesia, alternative medicine, manipulation, opioid analgesia, psychotropic medication, topical treatment, occupational therapy, and physical therapy. *Id*. According to Dr. Blank, Plaintiff must avoid certain activities due to medications' side effects, although the doctor did not identify the particular side effects or activities. R. 445 (affirming that Plaintiff was compliant with the prescribed treatment regimen). Dr. Blank also identified anxiety and depression as associated psychological factors. *Id*. He denied that Plaintiff's physical symptoms were greater than what would be expected for the physiological mechanisms or that she had disproportionate and persistent thoughts about the seriousness of her symptoms, but he did affirm that Plaintiff experienced persistently high levels of anxiety about her symptoms and that she devoted excessive time and energy to those symptoms. *Id*. Dr. Blank also affirmed that Plaintiff's course of treatment had been consistent with the symptoms and limitations described in the questionnaire. R. 446. According to Dr. Blank, in an eight-hour day, Plaintiff could perform a job in a seated position for one hour and a job standing and/or walking for less than one hour. *Id*. Plaintiff must avoid continuous sitting in an eight-hour day and must elevate her legs "six inches or less" while sitting. *Id*. Plaintiff was able to lift up to 10 pounds occasionally (meaning up to one-third of an eight-hour day) and carry up to 5 pounds

---

SSR 03-2p, 2003 WL 22399117, at *1 (Oct. 20, 2003).

13

occasionally. *Id*. Plaintiff had "significant limitations in reaching, handling or fingering," in that she could never use her hands/fingers for fine manipulations, could not grasp, turn and twist objects, or (including overhead). R. 447. Her symptoms were likely to increase if she were "placed in a competitive work environment" because she would suffer "more chronic pain[.]" *Id*. Her "experience of pain, fatigue, or other symptoms" were severe enough to occasionally (meaning up to one-third of an eight-hour workday) interfere with attention and concentration. *Id*. Plaintiff also required 30-minute unscheduled breaks every two hours. *Id*. She would likely be absent from work more than three times a month and had good days and bad days. R. 448. According to Dr. Blank, Plaintiff's symptoms and related limitations applied as far back as December 21, 2018. *Id*. Her symptoms and functional limitations were reasonably consistent with the clinical and/or objective findings in the questionnaire. *Id*.

## V.   DISCUSSION

Plaintiff argues, *inter alia*, that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to properly consider Dr. Blank's opinions. *Plaintiff's Brief*, ECF No. 11, pp. 18–23; *Plaintiff's Reply Brief*, ECF No. 14, pp. 2–3. This Court agrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d

14

607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: Occasional reach overhead with the bilateral upper extremities. Never climb ladders, ropes or scaffolds or crawl, and perform the other postural maneuvers occasionally. Must avoid concentrated exposure to extreme cold and hazards. Simple routine tasks. Goal-oriented rather than production-paced tasks. Requires a stable workplace (few if any changes of setting, processes and tools).

R. 112. In making this determination, the ALJ also specifically considered Dr. Blank's opinions as follows:

> Dr. Blank wrote a prescription for a New Jersey Motor Vehicle Commission (NJMVC) "handicap placard" on September 10, 2021 (Exhibit B16F/22).
>
> Then, Dr. Blank completed Family Leave Act/New Jersey Temporary Disability Insurance forms on October 25, 2022 in which he indicated that the claimant requires full time care, described as "medical and assist with ADL's [activities of daily living] & mobility" due to "hips, legs, lumbar spine pain;" first required care on August 4, 2022; will no longer require care October 25, 2022; and requires treatment visits at least twice per year (Exhibit B9D; B10D).
>
> Thereafter, Dr. Blank completed a "multiple impairment questionnaire" on December 28, 2022 in which he stated – It is "hard" for the claimant to walk, stand or lift. Standing, lifting, and walking for "an extend period of time" precipitates and/or aggravates pain. Dr. Blank also checked off both "yes" and "no" in response to a question asking if the claimant has good and bad days. (Exhibit B28F).

A few months later, Dr. Blank completed a "multiple impairment questionnaire" on February 1, 2023 in which he stated – The claimant has "difficulty" walking, standing, and lifting. Lifting, walking and standing for "long periods" precipitates and/or aggravates pain. She does not have good and bad days. (Exhibit B19E).

Dr. Blank also stated in his above-stated "multiple impairment questionnaire" of December 28, 2022 and his above-stated "multiple impairment questionnaire" on February 1, 2023 – The claimant is able to perform a job in a seated position for less than one hour in an 8-hour day. She can perform a job standing and/or walking for less than one hour in an 8-hour day. It is medically necessary for the claimant to avoid continuous sitting in an 8-hour workday and to elevate both legs while setting at waist level six inches or less. She must get up from a seated position to move around every 10-15 minutes and can return to a seated position after 10-15 minutes. She is able to lift 0-10 pounds occasionally and carry 0-5 pounds occasionally. She has "significant limitations in reaching, handling or fingering," in that she can frequently use her hands/fingers for fine manipulations and occasionally grasp, turn and twist objects and use her arms for reaching (including overhead). Her symptoms are likely to increase if she was "placed in a competitive work situation". Her "experience of pain, fatigue, or other symptoms" frequently are "severe enough to interfere with attention and concentration". She requires unscheduled breaks to rest. She is likely to be absent from work more than three times a month. (Exhibit B28F; B19E).

Then, Dr. Blank completed a "pain assessment" form on June 1, 2023 in which he stated – The claimant has "difficulty" with activities of daily living. "Activities" precipitate pain. "Movement" aggravates pain. It is medically recommended for the claimant "to avoid certain activities as the result of the above listed side effects," but with Dr. Blank failing to specifically list alleged medication side effects. Anxiety and depression are associated "psychological factors". She experiences "persistently high levels of anxiety" about her symptoms. She devotes "excessive time and energy to these symptoms". She able to perform a job in a seated position for one hour in an 8-hour day. She can perform a job standing and/or walking for less than one hour in an 8-hour day. It is medically necessary for the claimant to avoid continuous sitting in an 8-hour workday and to elevate both legs while setting at waist level six inches or less. She is able to lift 0-10 pounds occasionally and carry 0-5 pounds occasionally. She has "significant limitations in reaching, handling or fingering," in that she can never/rarely use her hands/fingers for fine manipulations, grasp, turn and twist objects, and use her arms for reaching (including overhead). Her symptoms are likely to increase if she was "placed in a competitive work situation". Her "experience of pain, fatigue, or other symptoms" occasionally are "severe enough to interfere with attention and concentration". She requires unscheduled breaks to rest. She is likely to be absent from work more than three times a month. She has good and bad days. (Exhibit B25E).

Dr. Blank, a long-time treating provider at AdvoCare, referenced objective findings as well as noted diagnoses and symptoms in his opinions in support of the same.

16

However, while the claimant generally having exertional, overhead reaching, and attention/concentration-related limitations is generally consistent with the record, the record fails to reveal that the claimant is as limited as each of these opinions suggest overall. For example, despite obesity, symptoms, the potential waxing and waning of symptoms, alleged medication side effects, and the above detailed abnormal objective findings and treatment history, the record fails to reveal, upon exam during the relevant period, atrophy, joint instability/laxity, swelling, motor deficits, pain behaviors (other than a one-time exam finding of the claimant being very emotional and having started to cry upon greater trochanter area palpitation - Exhibit B4F/32), a formal thought disorder, abnormal associations, inattentiveness to the examiner, or distractibility (Exhibits B4F/1-40; B5F-B10F; B11F/1-3; B12F-B16F; B17F/1-2, 5-7; B18F/9-22; B22F/11-22; B24F/15-17; B25F/19-61).

Therefore, in light of the above, Dr. Blank's opinions have limited persuasiveness (Exhibits B9D; B10D; B19E; B25E; B28).

R. 123–24.

An ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

17

For claims filed after March 27, 2017,[6] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

---

[6] As previously noted, Plaintiff's present application was filed on May 5, 2020.

medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulation further requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b), 416.920c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors."). Finally, an ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor" in order to satisfy the articulation requirements for the supportability and consistency factors, providing that the ALJ "weave[s] supportability and consistency throughout h[is] analysis of which doctors were persuasive." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

In her challenge, Plaintiff argues that the ALJ improperly discounted Dr. Blank's opinions solely because treatment records did not reflect evidence of atrophy, joint instability/laxity, swelling, motor deficits, repeated pain behaviors, a formal thought disorder, abnormal associations, inattentiveness, or distractibility. *Plaintiff's Brief*, ECF No. 11, pp. 20–23 (citing R. 124); *Plaintiff's Reply Brief*, ECF No. 14, pp. 2–3. According to Plaintiff, it is unclear

19

how these findings are relevant to Plaintiff's chronic pain associated with her diagnosed CRPS, a condition that no doctor has disputed. *Plaintiff's Brief*, ECF No. 11, p. 20 (noting further that CRPS is not documented through traditional objective medical findings); *Plaintiff's Reply Brief*, ECF No. 14, p. 2. Plaintiff also argues that it is not clear what the AJ meant by "formal thought disorders" or "repeated pain behavior." *Plaintiff's Brief*, ECF No. 11, p. 20. Plaintiff goes on to note that Dr. Blank's findings supported his opinions, which were also consistent with other record evidence. *Id*. at 21–22. Plaintiff asserts that the ALJ's relied on his own lay opinion when he rejected Dr. Blank's opinions by pointing to evidence of questionable relevance. *Id*. at 22–23; *Plaintiff's Reply Brief*, ECF No. 14, pp. 2–3.

This Court agrees that the lack of clarity in the ALJ's reasoning requires remand. For example, it is unclear to this Court what the ALJ meant when, in discounting Dr. Blank's opinion, he relied on the absence of, *inter alia*, "a formal thought disorder, abnormal associations, inattentiveness to the examiner, or distractibility." R. 124. The ALJ has not explained, and it is not clear to the Court, how these findings, which apparently relate only to limitations in mental functioning, are inconsistent with Dr. Blank's opined physical limitations, including, *inter alia*, the need to elevate both legs, limitations in sitting/standing/walking, and restrictions in lifting/carrying, and reaching/handling/fingering. R. 124, 410–12, 446–48, 951–53; *cf. Thomas v. Kijakazi*, No. 21-CV-3547, 2022 WL 17880922, at *7 (E.D. Pa. Dec. 22, 2022) ("However, the ALJ does not explain how Plaintiff's healthy cardiac condition serves as a basis to discount the limitations assessed by Dr. Tecce in the Lower Extremities Impairments Questionnaire, such as Plaintiff's ability to sit, or stand and walk, for only one and four hours, respectively, in an eight-hour workday, his need for unscheduled 15-minute breaks every one to two hours, or his likely absence from work two to three times per month."). Notably, Dr. Blank

20

expressly denied that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations, a statement that the ALJ found to be supported. R. 124, 412, 953.

Moreover, as Plaintiff argues, the ALJ improperly failed to clarify why the absence of such emotional or psychological findings were more relevant to Plaintiff's condition and functional limitations than were the specific findings identified by Dr. Blank. R. 124. The ALJ expressly considered Plaintiff's CRPS—a condition marked by sporadically occurring symptoms—and acknowledged "the potential waxing and waning of symptoms." R. 108, 124. Yet, the ALJ failed to then explain why he rejected Dr. Blank's opinions as inconsistent with the record.  *See* SSR 03-2p, 2003 WL 22399117, at *4 (Oct. 20, 2003) (noting that treatment records may note that "these signs are not present continuously, or the signs may be present at one examination and not appear at another" and that "[t]ransient findings are characteristic of RSDS/CRPS, and do not affect a finding that a medically determinable impairment is present"); *cf.* Ashley S. v. King, No. 24-CV-1728, 2025 WL 332545, at *9–10 (E.D. Pa. Jan. 28, 2025) (concluding that, where the claimant suffered from CRPS, among other impairments, the ALJ erred in discounting a medical opinion and where the ALJ found that the "restrictive" opinion was not supported, but the ALJ did not explain how certain evidence "discounted the existence of Plaintiff's pain, its severity, or how it affected her functionality").

At bottom, without further explanation, the Court simply cannot determine from this record if substantial evidence supports the ALJ's rejection of Dr. Blank's opinions and the RFC determination at step four. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (stating that the ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review") (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981) ("Since it is apparent

21

that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . [A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted); *Bienkowski v. Bisignano*, No. 4:24-CV-1714, 2025 WL 1668328, at *7 (M.D. Pa. June 12, 2025) ("[A]s part of the ALJ's duty of articulation, the ALJ must establish a logical bridge between the evidence and the ALJ's legal conclusions and factual findings."); *Glenda M. v. Comm'r Soc. Sec.*, Civ. No. 22-03137, 2023 WL 6387515, at *6 (D.N.J. Sep. 29, 2023) ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [his] conclusions.") (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)); *Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[7] Moreover, remand is appropriate even if, upon further examination of Dr. Blank's opinions and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation.").

---

[7] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Blank's opinions and the RFC determination, the Court does not consider those assertions.

22

## VI.    CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  February 13, 2026                                        *s/Norah McCann King*
                                                                NORAH McCANN KING
                                                          UNITED STATES MAGISTRATE JUDGE